# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. BROWN, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CITY OF NORTH CHICAGO and ) <br> WAUKEGAN TOWNSHIP, ) <br> ) <br> Defendants. ) <br> ) | No. 04 C 1288 <br> Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Michael L. Brown ("Brown") has filed a two-count First Amended Complaint against defendants, City of North Chicago ("North Chicago"), and Waukegan Township ("Waukegan"). Brown alleges that both North Chicago and Waukegan discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* Both North Chicago and Waukegan move to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons stated below, the court denies both motions.

## STANDARDS FOR A MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Sanville v. McCaughtry*, 266

F.3d 724, 732 (7th Cir. 2001). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page,* 291 F.3d 485, 486 (7th Cir. 2002). Nevertheless, the court is not required to "ignore any facts set forth in the complaint that undermine the plaintiff's claim [nor does it] assign any weight to unsupported conclusions of law." *LeBlang Motors, Ltd. v. Subaru of Am., Inc.,* 148 F.3d 680, 690 (7th Cir.1998) (internal citations and quotations omitted).

## ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

According to the First Amended Complaint, taken as true for purposes of this motion, Brown is an individual residing in Waukegan, Illinois. North Chicago is a municipality located in Lake County, Illinois. Waukegan is a township located in Lake County, Illinois. (First. Am. Compl. ¶ 4,5,6.) At all times relevant to this case, Waukegan administered and provided services through an "Earnfare Program," a program funded by the State of Illinois through which participants work to cover the value of food stamps and can earn up to $294 in excess of that amount per month. North Chicago contracted with Waukegan for participants in the Earnfare Program to work on certain municipal projects for North Chicago, including projects undertaken by North Chicago's Street Department. (*Id.* ¶ 7,8.)

On or about September 17, 2003, Waukegan assigned Brown, who was a participant in the Earnfare program, to work at North Chicago's Street Department. (*Id.* ¶ 9.) Prior to receiving his assignment, Brown informed Mr. Caldwell, a Township case worker, that because of back problems and a serious heart condition, he had a medical restriction regarding bending and lifting. (*Id.* ¶ 10.) Specifically, the restrictions provided that Brown should only bend as tolerated and should limit his lifting to ten pounds. (*Id.*) Mr. Caldwell replied that he did not want to

2

know about Brown's medical restrictions and advised him not to notify North Chicago of those restrictions. (*Id.*)

Soon thereafter, Waukegan instructed Brown to report to John McKnight at North Chicago's Street Department on October 1, 2003. (*Id.* ¶ 9.) On or about September 20, 2003, Brown went to North Chicago's Street Department and informed McKnight that he had bending and lifting restrictions. (*Id.* ¶ 11.) McKnight replied that those restrictions would not be a problem because his duties would be limited to picking up paper on the streets. (*Id.*) On or about October 2, 2003, however, Brown was assigned to work for Roger Hacke at the Street Department, who instructed Brown to move metal beams weighing approximately fifty pounds from one end of a garage to another. (*Id.* ¶ 12.) Brown informed Hacke of his restrictions but Hacke refused to assign Brown to a different task. (*Id.*)

The next day, the Street Department gave Brown the work assignment of lifting large tree branches and placing them in a tree grinder. (*Id.* ¶ 13.) Brown claims that this work caused great pain to his back. (*Id.*) Three days later, Hacke instructed Brown to lift and carry buckets of paint weighing approximately fifty pounds each despite the fact that Brown reminded him of his medical restrictions. (*Id.* ¶ 14.) Two days thereafter, Hacke and Gabriel Albarran assigned Brown the task of separating stones that weighed between twenty and forty pounds from asphalt. (*Id.* ¶ 15.) Brown told the two men about his restrictions but was told to continue doing the work. (*Id.*) Brown claims that several times while working, he noticed the two men laughing at him and that Albarran then asked another Street Department worker to lay more stones on Brown's pile to create additional work for him. (*Id.*)

On that day, October 8, 2003, Brown informed McKnight that Hacke, Albarran and

3

others were requiring him to perform tasks beyond his physical capabilities and claims that McKnight responded that he would "get in touch" with Waukegan (*Id.* ¶ 16.) The next day, Brown reported to work at the Street Department, where McKnight instructed him to call Waukegan. (*Id.* ¶ 17.) Brown did so and spoke with Mrs. Echeverria, who informed him that he could no longer participate in the Earnfare Program. (*Id.*) Brown then went to Waukegan office, where he was terminated from the Earnfare Program. (*Id.*)

Brown alleges that North Chicago's failure to provide the reasonable accommodations that he requested constituted an unlawful employment practice in violation of the ADA (*Id.* ¶ 21, 22.) and that as a result he suffered emotional distress. (*Id.* ¶ 23.) He further alleges that Waukegan's termination of his participation in the Earnfare Program also violated the ADA and as a result he suffered damage, including the loss of benefits available under the Earnfare Program as well as emotional distress. (*Id.* ¶ 26-27.) He asks this Court to award compensatory damages, which includes benefits available under the Earnfare Program as well as compensation for past and future monetary and non-monetary losses. He also requests that this Court award him with attorney's fees and costs and prejudgment interest on any damage and/or attorney's fee award. Finally, Brown asks that this Court order his reinstatement to the Earnfare Program.

## DISCUSSION

### I. North Chicago

Brown alleges that North Chicago discriminated against him in violation of the Americans with Disabilities Act by failing to accommodate his disability. The ADA provides that an employer discriminates against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise

4

qualified individual with a disability . . . ." 42 U.S.C. § 12112(b)(5)(A). To state a claim for of failure to accommodate, Brown must show that (1) he is disabled; (2) that he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) that North Chicago failed to make a reasonable accommodation. *Stevens v. Ill. Dept't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000).

North Chicago does not dispute that Brown was disabled. North Chicago argues, however, that Brown was not "otherwise qualified to perform the essential functions of the job," because he was "medically and physically unable to perform" the jobs he was assigned. (North Chicago's Reply, at 1.) The test for whether an individual is "qualified," though, is not whether the individual can perform every task assigned without any accommodation, as North Chicago's argument seems to imply, but rather whether the individual can perform the functions of the position "with or without reasonable accommodation." *Stevens*, 210 F.3d at 736. A "reasonable accommodation" is a "modificatio[n] or adjustmen[t] to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enables a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. app. § 1630.2(o)(ii); *see also Vande Zande v. State of Wisconsin Dept. of Administration*, 44 F.3d 538, 543 (7th Cir. 1995) ("It is plain enough what 'accommodation' means. The employer must be willing to consider making changes in its ordinary work rules, facilities, terms and conditions in order to enable a disabled individual to work."). A reasonable accommodation may include a transfer to a vacant position, *e.g., Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir. 2000), additional training, *e.g., Schmidt v. Methodist Hospital of Indiana, Inc.*, 89 F.3d 342, 344-45 (7th Cir. 1996), restructuring the job, *Feliberty v. Kemper Corp.*, 98 F.3d 274 (7th

5

Cir.1996), or simply "sitting down . . . and talking about the situation," *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996); *see also* 42 U.S.C. § 12112(9) (providing examples of reasonable accommodations).

According to the Complaint, North Chicago did none of this. While North Chicago was not required to create a new job to accommodate Brown's disability, it was required to assign him to a job – if one existed – that Brown could perform with a reasonable accommodation. Brown alleges that McKnight initially identified just such a job – "walking on the street picking up paper." (First Am. Compl. ¶ 11.) In the absence of any allegation in the Complaint showing that heavy lifting was an essential function of *every* potential position with the Street Department, North Chicago's argument that Brown was not a "qualified individual with a disability" fails.

North Chicago also argues that Brown fails to state a claim because he does not allege that North Chicago took any adverse employment action against him. To state a claim for failure to accommodate, however, Brown is not required to allege an adverse employment action. *See, e.g., Stevens*, 210 F.3d at 736 ("To make out a claim under the ADA, an individual must show . . . that the employer took an adverse job action against her because of her disability *or* failed to make a reasonable accommodation."); *Nawrot v. CPC International*, 259 F. Supp. 2d 716 (N.D. Ill. 2003) (holding that a plaintiff "is not required to prove an adverse employment action as part of his failure to accommodate *prima facie* case."). The failure to accommodate is itself an act of discrimination that violates the ADA. 42 U.S.C. § 12112(b)(5)(A) ([T]he term 'discriminate' includes – . . . (5)(a) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ."). Thus, North Chicago's

motion to dismiss is denied.

## II. Waukegan

Like North Chicago, Waukegan first argues that Brown was not a "qualified individual with a disability," and, also like North Chicago, Waukegan fails to consider whether Brown could have performed the functions of the job with a reasonable accommodation. For the reasons explained above, this argument fails.[1]

Waukegan also argues that even if Brown is successful in establishing liability under the ADA, he is not entitled to compensatory damages or injunctive relief. Title II of the ADA incorporates by reference the enforcement scheme found in § 505 of the Rehabilitation Act. *See* 42 U.S.C. § 12133. Section 505 of the Rehabilitation Act, in turn, authorizes "any person aggrieved by any act or failure to act" to obtain the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d *et seq.*]." 29 U.S.C. § 794a(a)(2). In *Guardians Assn. v. Civil Serv. Comm'n of New York City*, 463 U.S. 582 (1983), the Supreme Court held that private individuals could recover compensatory damages under Title VI for intentional discrimination. *See also Alexander v. Sandoval*, 532 U.S. 275 (2001). Following *Guardians*, numerous courts have held that compensatory damages are available under Title II of the ADA if the plaintiff shows discriminatory intent. *See Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 126 (1st Cir. 2003) ([P]rivate individuals may recover compensatory damages under . . . Title II only for intentional discrimination."); *Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir. 1998) ("Compensatory damages are not available under Title II . . . absent a showing of

---

[1] Waukegan's related argument that Brown was not "excluded from participation or denied benefits of the Earnfare program" but rather "by his inability to work . . . chose not to participate in the program" is utterly frivolous. (Waukegan Memo. in Supp., at 3.)

7

discriminatory intent."); *Roe ex rel. Preschooler II v. Nevada*, 332 F. Supp. 2d 1331, 1341 (D. Nev. 2003) (holding allegations of intentional discrimination sufficient to establish a claim for compensatory damages under Title II). Indeed, in *Tafoya v. Bobroff*, 865 F.Supp. 742 (D.N.M. 1994), one of the cases cited by Waukegan in support of its argument that compensatory damages are not available under Title II, the court explicitly held that compensatory damages are available if a plaintiff alleges intentional discrimination. *Id.* at 750 ("[T]o be entitled to compensatory damages under these sections... Plaintiff must allege that Defendant intentionally discriminated against [plaintiff] because of his disability."). Brown alleges that Waukegan intentionally discriminated against him because of his disability. If he prevails on this claim, he can recover compensatory damages.

Waukegan further argues that even if compensatory damages are available to Brown, they are inappropriate in this case because the Earnfare Program is designed for participants to "work off" the value of food stamps that they have already received. Thus, Waukegan argues that the State of Illinois, not Brown, is the primary intended beneficiary of the program and that allowing Brown to collect compensatory damages would "circumvent the purpose of the program." (Waukegan's Memo. in Supp., at 5.) Waukegan cites no authority to support this novel argument, and it is contrary to the Earnfare program's stated purpose, which is to "allow participants to engage in work-related activities to earn monthly financial assistance payments and to improve participants' employability in order for them to succeed in obtaining employment." 305 ILCS 5/12-4.4. Brown pled that the Program offered him the opportunity to earn up to $294 in excess of the value of food stamps received. Waukegan's argument that allowing Brown to collect compensatory damages would circumvent the purpose of the program

8

is patently without merit.

Finally, Waukegan argues that Brown is not entitled to injunctive relief. In its memorandum in support of its motion, Waukegan argues that the State of Illinois, not Waukegan, determines eligibility for the Earnfare program and thus that Waukegan has no authority to reinstate Brown. (Waukegan's Memo. in Supp., at 5.) As Brown points out in his response, Waukegan does not explain how it had the authority to fire Brown if the State of Illinois is the sole arbiter of participation in the Earnfare program. (Resp., at 7-8.) In its reply, Waukegan changes course and apparently admits that it has the authority to reinstate Brown, suggesting that he "come to the Township offices today and complete the paperwork requesting an assignment. The Township would then determine whether plaintiff satisfies the requirements set forth by the State of Illinois for placement." (Reply, at 2.) Yet Waukegan continues to insist that injunctive relief is not appropriate in this case, arguing that Brown admits that he is "unable to perform work required of him for that position." (*Id.*) This argument simply leads back to Waukegan's flawed argument that Brown was not a qualified individual, which the court has already rejected. Therefore, Waukegan's argument that injunctive relief is unavailable as a matter of law fails.

## ORDER

For the reasons stated above, the motions of City of North Chicago and Waukegan Township to dismiss are denied [## 20, 24]. Defendants are directed to answer Brown's First Amended Complaint on or before March 11, 2005. This case will be called for scheduling conference on March 14, 2005 at 9:30 a.m. In the meantime, the parties are directed to meet in a sincere effort to resolve this case short of trial.

Enter: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: February 28, 2005